```
 1  LEE TRAN & LIANG APLC
    Steven R. Hansen California Bar No. 198401
 2  Enoch H. Liang California Bar No. 212324
    601 South Figueroa Street, Suite 4025
 3  Los Angeles, CA 90017
    Telephone: (213) 612-3737
 4  Facsimile: (213) 612-3773
    E-mail: srh@ltlcounsel.com; ehl@ltlcounsel.com
 5
    Attorneys for Defendant
 6  Envisiontec, Inc.
 7
 8              UNITED STATES DISTRICT COURT
 9              CENTRAL DISTRICT OF CALIFORNIA
10                    WESTERN DIVISION
11
```

| | |
|---|---|
| ALEX SHPISMAN, an individual, | Case No. CV10 8355 R (PJWx) |
| Plaintiff, | Hon. Manuel L. Real |
| v. | **DECLARATION OF ALI EL-SIBLANI IN SUPPORT OF DEFENDANT ENVISIONTEC, INC.'s MOTION FOR A PROTECTIVE ORDER** |
| ENVISIONTEC GmbH, an entity of unknown origin, ENVISIONTEC, INC., a Michigan corporation, and DOES 1 through 10, | |
| Defendants. | DATE: May 2, 2011<br>TIME: 10:00 a.m.<br>CTRM: 8 |
| ENVISIONTEC, INC., a Michigan corporation, | |
| Counterclaim Plaintiff, | |
| v. | |
| ALEX SHIPISMAN, an individual, | |
| Counterclaim Defendant | |

1

DECL OF ALI EL-SIBLAN I ISO MOTION FOR
A PROTECTIVE ORDER

I, Ali El-Siblani, declare:

1.     I am the Chief Executive Officer of Envisiontec, Inc., ("Envisiontec") a named defendant in the above-captioned lawsuit. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath.

2.     Envisiontec, Inc. makes rapid prototyping devices sold under the names "Vanquish," "Xede," and "Ultra." Each of the devices includes a container with a resin that hardens upon exposure to light. They also include a light projector that projects light patterns onto the resin. The projected patterns determine the three-dimensional object being built. The light projector has a large array of micromirrors, and the movement of each mirror is individually controlled. Each of the three devices also includes a build platform on which the object is progressively built. The build platform moves downward into the resin during the build process.

3.     Envisiontec uses what is known as "control software" to control the movement of the light projector mirrors and the movement of the build platform in the Vanquish, Xede, and Ultra devices. The control software also includes an algorithm that compensates the projected light intensities to account for variations in incident intensities across the surface of the resin.

4.     The Vanquish, Xede, and Ultra machines also include software other than control software, including a program called the "Perfactory Software Suite." The Perfactory Software Suite converts a computer representation of a three-dimensional object to a set of volumetric pixels (called voxels) which determine the intensity of light that is projected across the surface of the resin. The output of the Perfactory Software Suite is job file which is used by the control software, as the control software uses the data from the job file to generate a series of commands to drive the light projector mirrors and any motion on the machine, such as the build platform movement.

5.     Envisiontec's software is created as "source code" which is written in a

language read and used by computer programmers. The code is then compiled into "executable code" which cannot be read but which is understood by a computer processor. When Envisiontec sells its devices to customers, it provides the executable code, but not the source code, to them. Nor does the company allow its personnel to disclose the source code publicly. Access to the source code is restricted on a "need to know" basis. The source code is maintained in secure locations in locked company facilities.

6. Envisiontec has invested hundreds of thousands of dollars in the development of the source used with the Vanquish, Xede, and Ultra machines. The code includes numerous novel features that cannot be reverse engineered merely by running the compiled, executable files provided to customers. The improper use or dissemination of the code to Envisiontec's competitors would cause significant damage to the company.

7. Prior to Mr. Shpisman arriving at Envisiontec in May 2006, the company had existing, operational control software for the Vanquish machine. In late 2007, Mr. Shpisman was asked to modify the existing control software source code to implement additional features and to support additional hardware per the company's direction. He was provided with the source code for the Vanquish control software that was in use at that time. At the beginning of 2008, his salary was also increased from $40,000 per year to $70,000 per year in light of his new programming duties.

8. In February 2009, Mr. Shpisman was told that he would be let go from the company due to insubordination and because he was behaving in a threatening and intimidating way toward company employees. However, I allowed Mr. Shpisman to work for four additional weeks while he secured other employment.

9. I am generally familiar with Mr.Shpisman's registered work, TXu-1-684-560. I recognize that it is control software source code developed for the Vanquish machine. Unbeknownst to the company and without the company's

3

permission, Mr. Shpisman took the modified control software source code that he wrote for the Vanquish based on the exisitng company source code that was provided to him and submitted it to the U.S. Copyright Office on March 4, 2009. We did not learn he had done this until he filed this lawsuit in November 2010.

10. The control software that is now in use on the Vanquish, Xede, and Ultra machines was written after Mr. Shpisman left Envisiontec in March 2009. It is written in a different programming language than the code Mr. Shpisman registered with the U.S. Copyright Office. He has not seen it, and it includes several novel features that cannot be reverse engineered and of which he would not be aware. The software incorporates Envisiontec's trade secrets and confidential know-how.

11. Given Mr. Shpisman's behavior and the importance of Envisiontec's source code, the company is concerned that the confidentiality and value of the source code will be compromised if he is provided access to it.

12. I understand that Mr. Shpisman has also sought details of Envisiontec's pricing, sales, revenues, and profits for the Vanquish, Xede, and Ultra machines, as well as for accessories such as resins. This information is also kept in strict confidence by the company and access is provided on a need-to-know basis. Mr. Shpisman was not allowed access to this information while he worked for the company. If this information were to get into the hands of our competitors, it could severely damage the company's competitive position.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 30 day of March 2011 at Ferndale, Michigan.

Ali El-Siblani